# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 1, 2013

No. 12-60296

Lyle W. Cayce
Clerk

ERIKA YAZMIN RODRIGUEZ,
also known as Erika Yasmin Rodriguez Garcia

Petitioner

v.

ERIC H. HOLDER, JR., U.S. ATTORNEY GENERAL

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A096 761 567

Before KING, DAVIS, and ELROD, Circuit Judges.

PER CURIAM:[*]

An Immigration Judge ("IJ") denied the Petitioner's request for a continuance of her immigration hearing because she was not eligible for an adjustment of her alien status. The Board of Immigration Appeals dismissed her ensuing appeal on the same grounds. Because the Petitioner was not immediately eligible for an immigrant visa and could not adjust her alien classification to one that was eligible for a visa, we find that the BIA did not

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-60296

abuse its discretion in dismissing her appeal. We therefore DENY the petition for review.

## I.

The Petitioner, Erika Yazmin Rodriguez ("Rodriguez"), is a citizen of Mexico who first entered the United States under a visitor visa in August 2004. On January 25, 2007, Rodriguez, who was still present in the United States, was charged as removable and ordered to appear before the Immigration Court. At that time, the IJ granted Rodriguez a continuance so that she could seek an adjustment of her immigration status and potentially obtain a visa. On February 20, 2007, Rodriguez's father, a lawful permanent resident of the United States, filed an I-130 visa petition for an alien relative on her behalf. During the time that Rodriguez's petition was pending, the IJ granted a series of continuances so that her petition could be processed. After an agency processing delay of 842 days, Rodriguez's petition was finally approved on June 11, 2009.

Despite having her visa petition approved, Rodriguez was not able to immediately qualify for a visa because of the long visa waiting period for certain aliens with approved visa petitions. Visa waiting periods are determined by the Department of Homeland Security ("DHS") based on an alien's familial relationship to a U.S. citizen or resident and the date on which the alien applies for her visa, or her "priority date." *See* 8 U.S.C. § 1153(a). The DHS regulates the number of visas issued by periodically revising the current visa eligibility date for each class of aliens; only aliens with priority dates prior to the current eligibility date are immediately eligible for a visa.

On May 4, 2010, Rodriguez appeared before the IJ and requested another continuance so that she might obtain a visa. As the child under 21 of a lawful permanent resident, visas were only available to aliens with priority dates earlier than June 1, 2005. However, Rodriguez's priority date was February 20, 2007, the date on which her father filed her visa petition. As a result, Rodriguez

No. 12-60296

sought more time so that her visa priority date might become eligible. Alternatively, she sought more time so that her father could take his naturalization exam and acquire U.S. citizenship. Once reclassified as the unmarried child under 21 of a U.S. citizen, Rodriguez would not be subject to waiting periods and could immediately obtain a visa.

The IJ denied Rodriguez's motion for a continuance, finding that she was not immediately eligible for a visa. Assuming an approximate day-by-day progression of the visa waiting list, the IJ found that Rodriguez would probably not be eligible for a visa for about 20 months. Moreover, the IJ found that even if her father naturalized, Rodriguez would not be immediately entitled to a visa because she would no longer qualify as a child under 21.[1] Having determined that Rodriguez would probably not qualify for a visa for a substantial period of time, the IJ denied the continuance.

Rodriguez appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), which found that the IJ did not abuse his discretion in denying a continuance. Agreeing that Rodriguez had failed to demonstrate that she could immediately obtain a visa either with her current alien classification or by her father's expected naturalization, the BIA dismissed her appeal.

II.

On appeal from the BIA, we review questions of law de novo and the BIA's factual findings for substantial evidence, meaning that "this court may not overturn the BIA's factual findings unless the evidence compels a contrary conclusion." *Gomez-Palacios v. Holder*, 560 F.3d 354, 358 (5th Cir. 2009). We review discretionary decisions, such as the denial of a continuance, for abuse of discretion. *Masih v. Mukasey*, 536 F.3d 370, 373 (5th Cir. 2008). We will consider

---

[1] Once reclassified as an adult daughter of a U.S. citizen, Rodriguez would maintain her priority date of February 20, 2007, but the current visa eligibility date for adult daughters of citizens at the time of the immigration hearing was October 15, 1992.

No. 12-60296

the underlying decision of the IJ to the extent it influenced the determination of the BIA. *Id.*

### III.

Our consideration of this petition for review is limited to whether the BIA's denial of a continuance constituted an abuse of discretion. According to the Immigration Court's procedural rules, an IJ may grant a motion for a continuance for "good cause shown." 8 C.F.R. § 1003.29. Under this "good cause" standard, the BIA's decision to deny a continuance is ordinarily within its sound discretion. *See Witter v. INS*, 113 F.3d 549, 555 (5th Cir. 1997). The BIA has not abused its discretion so long as its decision "is not capricious, racially invidious, utterly without foundation in the evidence, or otherwise so aberrational that it is arbitrary rather than the result of any perceptible rational approach. The BIA acts arbitrarily when it disregards its own precedents and policies without giving a reasonable explanation for doing so." *Cabral v. Holder*, 632 F.3d 886, 890 (5th Cir. 2011) (quoting *Galvez–Vergara v. Gonzales*, 484 F.3d 798, 801 (5th Cir. 2007)).

As the BIA has stated, the only general limitation governing an administrative immigration hearing is that it must be "fundamentally fair." *Matter of Sibrun*, 18 I. & N. Dec. 354, 356 (BIA 1983). In the context of a denied request for a continuance, the BIA has required proof of two factors to establish fundamental unfairness: (1) a showing that despite the good faith efforts of the alien, she was deprived of some important opportunity, and (2) a showing that the denial caused her "actual prejudice and harm and materially affected the outcome of [her] case." *Id.* at 356–57. As this court has recognized, the requirement of fundamental fairness is essentially a mandate of procedural due process, the essence of which is "notice and a fair opportunity to be heard." *See United States v. Villanueva-Diaz*, 634 F.3d 844, 850 (5th Cir. 2011). We therefore consider whether the denial of Rodriguez's request for a continuance

No. 12-60296

prejudicially deprived her of the opportunity to present evidence or an argument important to her case.

Rodriguez's complaint arises from the IJ's decision to deny her a continuance at an immigration proceeding whereby she sought to adjust her alien status. If she were able to adjust her alien status, she would no longer have been subject to removal from the United States. The relevant statute provides that an alien may seek adjustment of her status "if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." 8 U.S.C. § 1255(a). At Rodriguez's hearing, the IJ determined that Rodriguez failed to satisfy the third requirement for alien status adjustment: There was no immigrant visa "immediately available to [her] at the time [her] application [wa]s filed." *See* 8 U.S.C. § 1255(a).

### A.

Conceding that no visa was immediately available at the time of her application, Rodriguez first argues that she nonetheless should have been granted a continuance to permit her time to become eligible for a visa. Rodriguez emphasizes the fact that she became eligible for a visa within seven months of the IJ's decision.

However, Rodriguez ignores the fact that at the time of her request for a continuance, the IJ could not have predicted the availability of a visa within seven months. In fact, at the time of the IJ's decision, Rodriguez's priority date was 20 months after the current eligibility date, suggesting an approximate delay of 20 months before she could obtain a visa. *See* 8 U.S.C. § 1252(b)(4)(A) ("[T]he court of appeals shall decide the petition only on the administrative record on which the order of removal is based.").

No. 12-60296

More importantly, Rodriguez ignores the legal requirements for her request. The law is clear that she could not adjust her alien status because no visa was immediately available to her. *See* 8 U.S.C. § 1255(a). Rodriguez's argument thus amounts to a complaint that the IJ should have given her an indefinite extension of time to achieve compliance with the statute. However, this is not the type of situation which implicates concerns of "fundamental fairness" and the chance to present a full and fair case. Rodriguez's problem was not an inadequate opportunity to prepare her case and present available arguments, but her inability to comply with the requirements of a governing statute.[2] Having granted Rodriguez four continuances already, it was not fundamentally unfair to hold her to the visa requirement of § 1255(a). *See Ahmed v. Gonzales*, 447 F.3d 433, 438 (5th Cir. 2006) (concluding that the petitioner seeking a continuance lacked good cause because he was statutorily ineligible for adjustment of status). Cases from our sister circuits confirm that this is not an unusual holding.[3]

B.

---

[2] The availability of a visa for aliens with Rodriguez's alleged classification—children of lawful permanent residents—is determined by the "priority date" of the alien's original visa petition. At the time of Rodriguez's hearing, her priority date was February 20, 2007, but visa eligibility only extended to aliens with priority dates of June 1, 2005 or earlier.

[3] *See, e.g., Matter of Quintero*, 18 I. & N. Dec. 348, 350 (BIA 1982) ("[T]he fact that the respondent has an approved visa petition does not entitle him to delay the completion of deportation proceedings pending availability of a visa number."); *Luevano v. Holder*, 660 F.3d 1207, 1215 (10th Cir. 2011) ("Although the agency cases permit, and may even require, an IJ to continue proceedings in order to await mere processing of a properly filed visa petition with a current priority date, there is no agency or court precedent for requiring an IJ to grant an indefinite continuance so that a petitioner may remain in this country while awaiting eligibility for adjustment of status."); *Chacku v. U.S. Att'y Gen.*, 555 F.3d 1281, 1286 (11th Cir. 2008) (same); *Singh v. Att'y Gen. of U.S.*, 399 Fed. App'x 769, 772 (3d Cir. 2010) (same); *see also Juarez v. Holder*, 599 F.3d 560, 566 (7th Cir. 2010) ("Once removal proceedings have begun, the immigration judge has an obligation to resolve them in a 'timely and impartial' manner, 8 C.F.R. § 1003.10, and applicants for relief have an obligation to comply with the statutory and regulatory prerequisites for relief.").

No. 12-60296

Rodriguez alternatively argues that a visa was "immediately available" to her within the meaning of § 1255(a) by virtue of an impending change in her father's immigration status. Specifically, Rodriguez contends that her father was scheduled to re-take the citizenship exam at the time of her hearing.[4] Assuming Rodriguez's father could have passed the exam, he would become a U.S. citizen, and would have been entitled to file a preferential visa petition on Rodriguez's behalf. Once Rodriguez is reclassified as the child of a U.S. citizen, she contends that a visa would be immediately available to her.

However, Rodriguez's reliance upon an "imminent" change in her father's immigration status depends upon crediting a chain of conclusory assumptions not supported by any caselaw. Even assuming that Rodriguez would have been immediately entitled to a visa upon her father's citizenship, her father was not a citizen at the time of the hearing nor was it apparent that his citizenship was certain. Although we have reasoned that a continuance should be granted in certain circumstances where a valid visa petition awaits only a bureaucratic stamp, this is not such a case.[5] The fact that Rodriguez's father may have registered to re-take his citizenship exam does not lead inexorably to the conclusion that he will become a citizen. He admittedly failed the exam already; and to become a citizen, he must also pass a background check, an immigration officer must approve his application, he must take an oath of allegiance and

---

[4] Rodriguez contends that her father had previously attempted to take the citizenship exam in English but failed. At the time of Rodriguez's hearing, he was allegedly scheduled to re-take the exam in Spanish.

[5] *See, e.g., Wu v. Holder*, 571 F.3d 467, 468–69 (5th Cir. 2009); *Matter of Hashmi*, 24 I. & N. Dec. 785, 788 (BIA 2009) ("[D]iscretion should be favorably exercised where a prima facie approvable visa petition and adjustment application have been submitted  . . . .") (quoting *Matter of Garcia*, 16 I&N Dec. 653, 657 (BIA 1978)). Unlike the instant case, those cases concerned aliens whose only remaining hurdle to obtaining a valid visa was agency processing of the application. *See also Garcia*, 16 I. & N. Dec. at 656–57 (BIA 1978). *But see Ferreira v. U.S. Att'y Gen.*, No. 11-14074, 2013 WL 1566636, p. *3 (11th Cir. Apr. 16, 2013) (interpreting *Hashmi* to apply to all alien requests for a continuance).

renunciation, and he must meet residency and literacy requirements. *See* 8 U.S.C. §§ 1445–46, 1448. None of these requirements are mere formalities, as courts have not hesitated to treat individuals who fail to become fully naturalized as aliens subject to deportation.[6]

The cases that we have found with similar facts bolster this conclusion. In *Iqbal Ali v. Gonzales*, the Seventh Circuit considered whether it was proper to deny a continuance when the only evidence of a relative's impending citizenship was a prior failed attempt to naturalize. 502 F.3d 659, 665 (7th Cir. 2007). The court found that without more certainty, the IJ was not required to allow an alien's relative additional time to obtain citizenship. *Id.* In *In re Samuel Owusu Jr.*, A095-329-362, 2010 WL 4822958, p. *1 (BIA Nov. 8, 2010) (unpublished), the BIA considered the identical argument of a visa applicant who was denied a continuance he sought so his wife could obtain citizenship. *Id.* The visa applicant's wife had just passed the citizenship test and interview, but she had not yet sworn an oath of allegiance. *Id.* Because the alien had not offered proof that his wife's impending citizenship was certain, the BIA found that it was not an abuse of discretion to deny the alien a continuance. *Id.* In *Hasarafally v. United States*, Nos. 10-Civ-3457-SAS, S1-050CR-401 (MBM), 2012 WL 6107685, p. *9 (S.D.N.Y. Dec. 10, 2012), a federal district court found that even though an immigrant had passed the citizenship exam and lived in the United States since he was fourteen, "it does not follow that [he] thereby became a United States citizen. For example, [he] does not claim that: an Immigration and Citizenship Services officer has determined that his citizenship application

---

[6] *See Oakfor v. Gonzales*, 456 F.3d 531, 533–34 (5th Cir. 2006) (failure to take oath of allegiance at public ceremony precludes citizenship); *Tovar-Alvarez v. U.S. Att'y Gen.*, 427 F.3d 1350, 1351–52 (11th Cir. 2005) (same); *see also Perdomo-Padilla v. Ashcroft*, 333 F.3d 964, 969 (9th Cir. 2003) (naturalization statute "makes no provision for the attainment of nationality short of full naturalization"); *Salim v. Ashcroft*, 350 F.3d 307, 310 (3d Cir. 2003) ("[N]othing less than citizenship will show 'permanent allegiance to the United States.'").

should be granted; [or] that he took the oath of renunciation and allegiance." *Id*. The court thus found him subject to deportation as an alien. *Id*.

Because Rodriguez's father's citizenship status was neither certain nor imminent, we conclude that she has not shown that a visa is immediately available to her. Accordingly, the IJ did not abuse his discretion in denying a continuance on this ground.

## C.

Rodriguez finally argues that a visa was immediately available to her by virtue of her entitlement to a prioritized alien status under the Child Status Protection Act ("CSPA") (codified as 8 U.S.C. § 1153(h)(1)(A)). Congress enacted the CSPA to allow the children of visa applicants to maintain their preferential status as children under age 21 in certain cases even though they might be older than 21 by the time their visa petition is approved. *Khalid v. Holder*, 655 F.3d 363, 367 (5th Cir. 2011). Specifically, the "CSPA provides an age formula that allows for an adjustment to the alien's biological age to account for agency delay in processing the petition." *Id*. at 368 (citations omitted). If Rodriguez is permitted to qualify as a child under the CSPA, she contends that she will be able to utilize an earlier priority date, thus immediately entitling her to an available visa.

The CSPA provides that a determination of whether an alien qualifies as a child under age 21 is made by using "the age of the alien on the date on which an immigrant visa number becomes available," reduced by "the number of days in the period during which the applicable petition . . . was pending." 8 U.S.C. § 1153(h)(1)(A–B). Rodriguez, who was born on September 23, 1986, was 24 years and 251 days old at the time she finally obtained an immigrant visa (June 2011).[7] Subtracting the 842 days which Rodriguez's petition was pending yields

---

[7] Because specific dates have not been provided in some cases, we have assumed the earliest possible date in a referenced time period so as to construe any ambiguity in favor of

No. 12-60296

a CSPA age of 22 years and 139 days.[8] Because Rodriguez cannot derive a CSPA age under 21, she cannot qualify as a child, utilize an earlier priority date, or immediately obtain a visa. The BIA did not abuse its discretion by concluding that Rodriguez was not entitled to a continuance by virtue of the CSPA.

IV.

For the foregoing reasons, we find that the BIA did not abuse its discretion in dismissing Rodriguez's appeal. The petition for review is DENIED.

---

Rodriguez.

[8] Rodriguez also suggests in her brief that the appropriate visa availability date was the date on which her priority date first became eligible, November 2010, although she apparently did not actually obtain a visa on that date. Even assuming the propriety of using that date and reducing it by the applicable 842-day visa pending period, Rodriguez would still have a CSPA age of 21 years and 293 days. Thus, Rodriguez is unable to derive a CSPA age below 21 in any event.